UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| BRUCE MELTON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-2046 |
| PLASTIPAK PACKAGING, INC., | ) |
| Defendant. | ) |

**OPINION**

On February 18, 2005, Plaintiff Bruce Melton, proceeding pro se, filed a Complaint (#3) alleging he was terminated from his employment with Defendant Plastipak Packaging as a result of his race, African-American, in violation of Title VII of the Civil Rights Act of 1964. On February 17, 2006, Defendant filed a Motion for Summary Judgment (#32), and the matter is now fully briefed. For the reasons that follow, the Motion for Summary Judgment is GRANTED.

FACTS

Plastipak manufactures plastic packaging containers for consumer products companies and operates a facility in Champaign, Illinois. In May 2002, Melton was placed in the Champaign facility by a temporary employment agency as a material handler. In this position, Melton worked in a warehouse receiving materials, putting them in rows, keeping inventory, and maintaining the warehouse. On August 30, 2002, Melton completed an employment application for Plastipak. On his application, Melton indicated he was employed by a temporary agency from June 1985 to the

present. However, Melton had been incarcerated during a portion of that time period. On October 22, 2002, Plastipak hired Melton as a material handler. The employee handbook, which Melton received, states that an employee is subject to discharge for any dishonest statement made on any report required by the company, including an employment application.

During his employment, Melton's immediate supervisor was Dan Luhrsen. Luhrsen reported to Robert Walker, who, in turn, reported to Jan Wenning. Melton received at least three pay raises during the course of his employment, but also received three written warnings. Melton received his first warning on April 4, 2003, for disrupting work on the front lines and arguing with a supervisor, Art Jones. Melton testified in his deposition that the supervisor was cursing at him. A note on the bottom of the write up by the human resources director indicates: "Spoke with Art Jones: he admitted that he might have approached Bruce somewhat 'strong' or came off 'too strongly.'" On August 6, 2003, Melton received a written warning for poor attendance because he was absent more than three days in three months. On January 2, 2004, Melton received his third written warning for fork truck safety after he hit a door frame with a forklift.

During the week of December 18, 2003, Human Resources Generalist Sara Starrick received an anonymous phone call. The caller informed Starrick that Melton was taking Plastipak's pallets of gaylords[1] and selling them to a man named Larry Meyers. The caller informed Starrick that this occurred two to three times per week between 6 p.m. and 8:30 p.m. at a specific warehouse. The caller further told Starrick that Melton helped Meyers load the pallets onto Meyers' truck, and Meyers took the pallets to Georgetown, Illinois to be recycled. Starrick informed Wenning of the

---

[1] Gaylords are oversized corrugated containers that are flattened for storage and stored on pallets.

phone call.

On January 13, 2004, Steve Atwood, a warehouse trainer at Plastipak, contacted Walker and informed him that he saw someone loading pallets of gaylords onto a pickup truck outside of the preform warehouse. Walker contacted Wenning and informed him of what he had learned from Atwood. Wenning and Walker later met at the preform warehouse. As they were approaching the dock area where the pallets were being loaded, Melton drove down the aisle on a forklift carrying eight wooden pallets. Melton stated he was using the pallets to straighten up some gaylords. Walker checked the surrounding area, but he did not see any gaylords out of place. Walker told Melton to take the pallets to the back then meet him and Wenning outside the dock area. Walker, Wenning, Atwood, and Travis Day, a team leader, spoke to the man driving the truck, Larry Meyers. Meyers was asked what he was doing, and he responded that he was in the recycling business. Meyers stated a Plastipak employee helped him take scrap pallets of gaylords. When asked to identify the employee who was helping him, Meyers stated he did not know the individual's name but thought it was "a white guy with gray hair and glasses." Walker asked the preform lead driver to bring all of the drivers over to the dock area so Meyers could identify the employee. Melton later walked onto the dock area. Wenning and Walker asked Melton if he knew Meyers, and Melton indicated he did not. Wenning and Walker then told Melton to unload the pallets from Meyers' truck.

Day went outside to talk to Meyers, and asked him who helped him with the scrap pallets. According to Day, Meyers identified Melton. In his deposition, Meyers testified as follows:

> Travis asked me who brought them [the scrap pallets] out. I told them a white guy.
> And he says, Well, you know you're going to go to jail – or something about jail.
> I said, Travis, I don't need to go to jail. I'm not out here stealing nothing. He said

come on, walk with me. So I walked. We walked up this ramp by the building there and he says, Well, I want to know who brought the boxes out. And I said a white guy. And he says, Well, I'll call everyone that's working down here. He says, Are you sure it wasn't the black guy? And I says, Well, all you have to do is tell me it was him, or whoever, and I'm going to let you go. I wanted out of there. I didn't need the trouble. So the first person that came by I said, yeah, that was them. Because I wasn't out to try to get the white guy in trouble, you know.

Day then went inside and told Walker that Meyers had identified Melton.

Shortly thereafter, Michael Gnaden, a lead driver, informed Wenning that on January 7, 2003, Meyers approached him in the warehouse and asked if "Bruce [Melton] was around." Gnaden told Wenning he later saw Melton talking to Meyers. After she was informed of this, Wenning found Melton and told him to clock out and that further investigation would be conducted. The following day, Wenning met with Walker, and they agreed that Melton had been dishonest about his relationship with Meyers and should be terminated. Someone from the human resource department called Melton and asked him to come pick up his last paycheck and personal belongings. Melton received a termination notice later that day, but he refused to sign it.

On April 26, 2004, Melton filed a charge of discrimination with the Illinois Department of Human Rights. Melton alleged he was discriminated against because of his race and was the victim of racial harassment. On February 11, 2005, Melton received a notice of right to sue. Melton filed his complaint in the instant case on February 18, 2005.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988). Furthermore, this court is to construe pro se filings liberally. Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001).

A claim of discrimination under Title VII may be proven directly or indirectly. O'Neal v. City of New Albany, 293 F.3d 998, 1003 (7th Cir. 2002). Melton lacks any direct evidence of race discrimination and so his claim must be evaluated under the indirect method of proof as established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Traylor v. Brown, 295 F.3d 783, 787-88 (7th Cir. 2002). Under this analytic framework, the plaintiff first must establish certain prima facie elements for a case of race discrimination: (1) he is a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly-situated employees outside the protected class were treated more favorably. Traylor, 295 F.3d at 788. If the plaintiff can meet this initial showing, then the burden shifts to the employer to assert a legitimate, nondiscriminatory reason for the challenged action. Simmons v. Chicago Bd. of Educ., 289 F.3d 488, 492 (7th Cir. 2002). The burden then shifts back to the plaintiff to present evidence that would allow the trier of fact to conclude that the employer's proffered reason is pretextual.

Simmons, 289 F.3d at 492.

This court will first turn to the issue of whether Plastipak's reason for Melton's termination was pretextual because absent a finding of pretext there is no need to address whether Melton has established a prima facie case.[2] See Holmberg v. Baxter Healthcare Corp., 901 F.2d 1387, 1391 (7th Cir. 1990). Plastipak asserts that Melton was terminated for dishonesty, specifically regarding his statement that he did not know Meyers. Melton argues that this reason is pretextual because he was never called in to give his side of the story, the police were not called until the morning after the incident in which Meyers was caught taking pallets outside the warehouse, and because Day, who questioned Meyers, was Meyers' cousin. In the Seventh Circuit, "even if the business decision was ill-considered or unreasonable, provided that the decisionmaker honestly believed the nondiscriminatory reason he gave for the action, pretext does not exist." Little v. Illinois Dep't of Revenue, 369 F.3d 1007, 1012 (7th Cir. 2004).

Melton does not dispute that Human Resources Generalist Sara Starrick received an anonymous phone call informing her that Melton was taking Plastipak's pallets and selling them to Meyers. The caller also provided specific information as to how Melton was doing this. Starrick communicated this call to Wenning, who participated in the decision to terminate Melton. Melton also does not dispute that Meyers identified him as the man who was providing him with the pallets. Melton points to two written statements which were provided by Meyers to Melton indicating he never told employees of Plastipak that Melton was supplying him with pallets. However, during his

---

[2] Plastipak argues Melton cannot establish his prima facie case because he was not meeting its legitimate expectations as evidenced by his receipt of three written warnings and dishonesty on his application. However, this court need not address that issue because the case can be decided on the issue of pretext.

deposition, Meyers testified that he did identify Melton as the person with whom he was working, even if he only did so he would be allowed to leave. Furthermore, Gnaden had informed Wenning that Meyers had come to Plastipak looking for Melton and Gnaden later saw the two talking. While the investigation into the alleged theft of the pallets may not have been executed at a high standard, Melton has produced no evidence indicating that his superiors did not honestly believe he had lied about his relationship with Meyers. Therefore, summary judgment is appropriate on this claim.

Melton also brings a claim for racial harassment. To survive summary judgment on this claim, Melton must establish that: (1) he was subjected to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe and pervasive enough to alter the conditions of his employment and create a hostile and abusive working environment; and (4) there is a basis for employer liability. Luckie v. Ameritech Corp., 389 F.3d 708, 713 (7th Cir. 2004). Melton alleges that the following circumstances give rise to a claim for racial harassment: (1) a co-worker, Mike Lake, was "harassing and verbally assaulting" Melton; (2) Day "coerced" Meyers into saying Melton was involved in giving Meyers the pallets; (3) a supervisor who had been terminated told Melton "Bob Walker was going to get rid" of Melton; and (4) Mike Lake was getting more hours than Melton. Initially, this court notes Melton has failed to present evidence on most of these assertions. In addition, Melton has produced no evidence that these circumstances were related to his race. Furthermore, Melton has not demonstrated any alleged harassment was severe and pervasive. "In assessing the severity and pervasiveness of the conduct, [the court] looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Russell v. Board of Tr. of the Univ. of Ill., 243

F.3d 336, 343 (7th Cir. 2001).  In considering these factors, Melton has not presented any evidence which could support a finding that he was subjected to severe and pervasive harassment based upon his race.  Accordingly, summary judgment is appropriate on this claim as well.

IT IS THEREFORE ORDERED:

    (1) Defendant's Motion for Summary Judgment (#32) is GRANTED.

    (2) Plaintiff's Motion for Leave to Respond to Defendant's Reply (#39) is DENIED.

    (3) This case is terminated.

ENTERED this 10th day of April, 2006

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE